UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

TREASURE VALLEY FENCE PANELS LLC, an Idaho limited liability company; THE FENCE STORE L.L.C., an Idaho limited liability company;

Plaintiffs,

v.

FEDERATED MUTUAL INSURANCE COMPANY, a Minnesota corporation,

Defendant.

Case No. 1:25-cv-00420-AKB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Defendant Federated Mutual Insurance Company's Motion to Dismiss Counts Three Through Twelve of Plaintiffs' Second Amended Complaint (SAC) (Dkt. 24). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court grants in part and denies in part the motion.

## I. BACKGROUND[1]

Federated Mutual Insurance Company (Federated) issued Treasure Valley Fence Panels LLC (Treasure Valley) an insurance policy, Businessowners Policy No. 6142701, for the period December 10, 2021, through December 10, 2022. Effective December 10, 2021, Federated added The Fence Store L.L.C (Fence Store) as an additional named insured. Treasure Valley and Fence Store both operated from 31 W. Idaho Avenue in Homedale, Idaho, and both held an ownership interest in inventory located there (Dkt. 22 at 3-5 ¶¶ 6-17).

The Policy provides that Federated "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss"(Dkt. 27-3 at 9) and defines "Covered Causes of Loss" as "[r]isks of direct physical loss unless the loss is" excluded or limited (*id*. at 10). The Policy's Dishonesty exclusion excludes certain losses caused by or resulting from dishonest or criminal acts by an insured or specified persons associated with the insured or property (*id*. at 21).

The Policy also imposes duties after a loss: As often as Federated "may reasonably require[]," an insured must permit Federated to inspect the damaged property, "examine [the insured's] books and records," and make copies of those records (*id*. at 24-25). The insured must also submit a signed, sworn proof of loss containing information Federated requests to investigate the claim and "[c]ooperate with [Federated] in the investigation or settlement of the claim." The Policy permits Federated to examine an insured under oath "at such times as may be reasonably required" concerning matters relating to the insurance or a claim, including the insured's books

---

[1] For purposes of this motion, the Court accepts the well-pleaded factual allegations as true. The Court quotes and describes provisions of the Policy only to provide context and does not resolve any disputed issue of Policy interpretation or coverage.

and records (*id.* at 24-25). The Policy also contains a concealment-or-misrepresentation condition under which intentional concealment or misrepresentation of a material fact concerning the Policy, covered property, an insured's interest in the property, or a claim may void coverage (*id.* at 64).

Federated's agent allegedly worked regularly with Treasure Valley and Fence Store. The SAC alleges the agent knew that the businesses maintained much of their inventory, sales, and financial information on computers located at the Store or in paper files kept there. It further alleges that the agent knew Treasure Valley was a startup, knew of loans and liens affecting its financial condition, and knew the general reputation and criminal history of the businesses' owners (Dkt. 22 at 5-6 ¶¶ 18-27).

On November 17, 2022, a fire occurred at the Homedale property and caused substantial damage to the building and its contents, including business personal property, inventory, and equipment. Local fire departments and police responded, and the Homedale Police Department, Owyhee County Sheriff's Office, local fire departments, and federal authorities, including the Bureau of Alcohol, Tobacco, Firearms and Explosives, investigated the fire (*id.* at 6 ¶¶ 28-32). The SAC states that "at no time" was either Plaintiff, their owners, business partners, members, managers, representatives, agents, employees, family members, or other persons with an interest in the business "identified nor strongly considered as subject(s) of the criminal arson investigation by any known local, state nor federal governmental entity nor authority" *(id.* at 6-7 ¶¶ 33-34).

Treasure Valley and Fence Store notified Federated or its agent of the loss on November 18 or 19, 2022. Federated's agent visited the Store shortly thereafter and allegedly knew "the fire created a total loss of Plaintiff[s'] technological systems, inventory lists and other documents," as well as inventory and other assets (*id.* at 7 ¶¶ 36-38). On or about December 5, 2022, Treasure

Valley and Fence Store submitted a proof of loss and thereafter continued updating their demand (*id.* at 8 ¶¶ 39-41).

Federated opened an investigation and requested financial, computer, inventory, sales, and other business records. The SAC states Federated "requested and demanded information from Plaintiffs that it knew was destroyed in the fire," including "local computer systems, hard drives, paper documents and files, inventory and sales lists and logs and data," along with other documentation and equipment (*id.* at 8 ¶ 43). Treasure Valley and Fence Store provided documents and information and made the property available for inspection. They maintain that they reasonably complied with Federated's requests and the Policy (*id.* at 7-9 ¶¶ 35, 43-49). The SAC alleges Curtis and Destiny Batho "produced everything that was not damaged or destroyed in the fire." (*id.* at 18 ¶¶ 104-07).

On September 21, 2023, Federated issued its first denial "claiming Plaintiffs had failed to comply with policy conditions" (*id.* at 9 ¶ 52). The SAC attributes that denial to Plaintiffs' inability to produce documents that were "either non-existent, privileged, or had been destroyed" in the fire (*id.*). Although the September 21 letter itself is not in the record, Federated's June 10, 2025, letter describes the earlier decision as a denial "for failure to comply with conditions of the Policy" (Dkt. 27-4 at 6).

On February 26, 2025, Federated required representatives of both Treasure Valley and Fence Store to submit to examinations under oath, which were recorded by video and transcribed by a court reporter. The SAC alleges the representatives "provided answers and information within their reasonable control and possession" (Dkt. 22 at 8-9 ¶¶ 45-49). It also characterizes the businesses as having "cooperated in good faith, providing extensive documentation and sworn testimony" throughout the claims process (*id.* at 10 ¶ 58).

On June 10, 2025, Federated issued another written denial. The letter states that Federated "denies the Claim in its entirety for the reasons set out below" (Dkt. 27-4 at 2). After quoting pertinent Policy provisions, Federated stated:

> Based on information obtained during the course of its investigation, Federated has concluded that The Fence Store and Treasure Valley, or someone acting on their behalf, intentionally set, or caused to be set, the Fire at the Location.

(*id.* at 5). Federated therefore concluded "there is no coverage under the Policy" for the claimed fire loss (*id.*).

Federated identified several additional grounds. It invoked the Dishonesty exclusion because, in Federated's view, the claimed losses "were caused by or resulted from dishonest or criminal acts by The Fence Store or Treasure Valley" or persons covered by the exclusion (*id.* at 5). Federated also concluded that concealment or misrepresentation voided the Policy. It identified alleged misrepresentations concerning: (1) the source and extent of Treasure Valley's debts before it sold its assets to Fence Store and at the time of the fire; (2) Treasure Valley's financial condition at the time of the fire; (3) Fence Store's financial condition at the time of the fire; (4) Destiny Batho's whereabouts on the evening of November 16, 2022; (5) Curtis Batho's whereabouts that evening; (6) Curtis Batho's whereabouts when he learned of the fire; (7) judgments and liens against Treasure Valley; (8) loans to Fence Store; (9) Destiny Batho's arrests and convictions; and (10) Curtis and Destiny Batho's asserted lack of involvement in setting or causing the fire (*id.* at 5-6).

Federated stated that Treasure Valley and Fence Store had "violated the conditions of the Policy requiring that Federated be permitted to examine your books and records, as well as the condition of the Policy requiring your cooperation in the investigation of the Claims, by willfully and deliberately failing to produce documents and records requested by Federated" (*id.* at 6). Federated specifically identified three categories of information: a Wells Fargo bank statement

reflecting transactions in Curtis Batho's personal account around the date of the fire; screenshots of Curtis and Destiny Batho's text communications on November 16 and 17, 2022; and financial records stored on two Dell computers used to track Fence Store's sales and expenses (*id.*).

The June letter did not "abandon[]" the September 2023 rationale (*compare* Dkt. 22 at 9 ¶ 53, *with* Dkt. 27-4 at 6). Instead, Federated expressly stated:

> You are reminded that Federated denied the Claim by letter dated September 21, 2023 for failure to comply with conditions of the Policy. The denial stated in that letter has not been withdrawn and is incorporated herein by this reference in its entirety.

(Dkt. 27-4 at 6). Federated thus maintained its earlier noncompliance denial and added grounds that the insured caused the fire, dishonesty, and concealment or misrepresentation. The letter states that Federated based its decision on the information "at the present time," reserved other grounds that additional information might disclose, and invited Treasure Valley and Fence Store to submit additional information for consideration (*id.*).

The SAC characterizes Federated's arson conclusion as having been made "without a scintilla of credible evidence" and asserts that "Federated possessed no evidence to support its arson defense" (Dkt. 22 at 10, 17 ¶¶ 56-58, 97). It alleges that "no state or local fire investigator, nor any law enforcement agency, has concluded that the fire was the result of arson perpetrated by Plaintiffs or anyone associated with them," and that "no person associated with Plaintiffs has been arrested for, charged with, or convicted of any crime in connection with the fire" (*id.* at 10 ¶ 56).

The SAC likewise characterizes Federated's noncooperation and misrepresentation grounds as "pretextual." It states that Federated demanded, among other things, "personal text messages and financial records from computers destroyed in the fire" despite the businesses' production of "extensive documentation and sworn testimony" (*id.* at 10 ¶ 58). Counts Four through Twelve add that Federated repeatedly requested information Treasure Valley and Fence

Store had already supplied, requested documents the businesses said they could no longer access, and continued to deem their production insufficient (*id.* at 18-27 ¶¶ 104-07, 113-16, 122-25, 132, 139-40, 147-50, 173-80).

Federated paid no amount for the claimed fire loss (*id.* at 11 ¶ 61). Treasure Valley and Fence Store never resumed operations after the fire, which the SAC attributes to Federated's failure to pay the claim (*id.* at 12-13 ¶¶ 74-78). Count Three identifies attorneys' fees, expert-witness fees, litigation costs, and "other economic and non-economic damages" as damages beyond unpaid Policy benefits (*id.* at 16-17 ¶¶ 94-100).

The SAC organizes the conduct of handling claims into ten counts. Although Count Three is captioned as a claim for breach of the implied covenant of good faith and fair dealing, its substantive allegations track Idaho's tort of insurance bad faith (*id.* at 16-17 ¶¶ 94-100). Counts Four through Twelve each invoke a different subsection of Idaho Code § 41-1329 and largely characterize the corresponding conduct as a separate breach of the implied covenant of good faith and fair dealing (Dkt. 22 at 17-27 ¶¶ 101-82).

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a claim upon which relief can be granted. Rule 8(a)(2) requires only a short and plain statement of the claim, showing the plaintiff is entitled to relief and giving the defendant fair notice of a plaintiff's claim and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts which, if true, state a plausible claim for relief. *Id.* A claim is facially plausible when the plaintiff pleads factual content allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Twombly*, 550 U.S. at 555.

Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. The Court ordinarily limits its review to the complaint, but it may consider documents attached to or incorporated by reference into the complaint without converting the motion to one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiffs' claims arise under and repeatedly rely on the Policy, and the SAC quotes and relies on Federated's June 10, 2025, denial letter. The Court therefore considers those documents. It does not rely on Federated's investigative correspondence attached to its reply to resolve disputed facts.

## III. ANALYSIS

The labels Plaintiffs assign to their claims obscure the distinction under Idaho law between the tort of insurance bad faith and a contractual claim for breach of the implied covenant of good faith and fair dealing. The Court therefore addresses the claims according to their substantive allegations rather than their titles.

### A. Count Three - Insurance Bad Faith

An insured asserting first-party insurance bad faith must show that the insurer intentionally and unreasonably denied or delayed payment, the claim was not fairly debatable, the denial or delay was not the result of a good-faith mistake, and the resulting harm is not fully compensable

by contract damages. *Rizzo*, 305 P.3d at 527-28. Federated argues Plaintiffs fail to plausibly plead those elements and instead attach conclusory labels—including "unreasonable," "pretextual," and "baseless"—to an ordinary coverage dispute (Dkt. 25 at 3-5; Dkt. 27 at 2-8). That criticism has some force. Several allegations characterize Federated's conduct rather than provide facts supporting those characterizations. Taken as a whole, however, the SAC pleads more than labels and conclusions.

As detailed above, the SAC alleges the Policy covered the fire loss; Federated knew the fire destroyed or rendered inaccessible important business records but nevertheless requested records Plaintiffs contend had been destroyed; Federated then denied the claim for noncompliance with Policy conditions; and Plaintiffs thereafter provided additional information and submitted to examinations under oath. In June 2025, Federated maintained its denial based on noncompliance while adding arson caused by the insured, dishonesty, and concealment or misrepresentation as grounds for denial. Plaintiffs specifically allege that no known governmental investigation identified or strongly considered them as subjects of a criminal arson investigation and that Federated lacked a reasonable evidentiary basis for its later arson conclusion, instead relying on "self-serving speculation" (Dkt. 22 at 10 ¶¶ 33-34, 56-58).

Accepting the well-pleaded factual allegations as true and drawing reasonable inferences in Plaintiffs' favor, Plaintiffs have plausibly alleged that Federated intentionally and unreasonably denied coverage on grounds that were not fairly debatable. The same allegations permit a reasonable inference that the denial was not the result of a good-faith mistake. The SAC therefore alleges more than an adverse coverage decision followed by disagreement. Plaintiffs also allege harm beyond unpaid Policy benefits, including economic and other damages resulting from

Federated's claims handling (*id.* at 16-17 ¶¶ 99-100). Accordingly, the Cout concludes the SAC states a plausible bad-faith claim and denies Federated's motion to dismiss Count Three.

**B. Counts Four Through Twelve**

Counts Four through Twelve require a different result. Although Plaintiffs' briefing sometimes describes these counts as part of their "common law" bad-faith theory, the SAC largely pleads them as separate claims for breach of the implied covenant of good faith and fair dealing, each tied to a different subsection of Idaho Code § 41-1329 (Dkt. 22 at 16-28 ¶¶ 101-182). Idaho recognizes breach of the implied covenant as a claim distinct from the tort of insurance bad faith. *Rizzo*, 305 P.3d at 527-28. The covenant requires the parties to "perform in good faith the obligations imposed by their agreement," and a breach occurs when a party "violates, nullifies or significantly impairs any benefit" of the contract. *Id.* at 528.

Federated is correct that the Unfair Claims Settlement Practices Act does not itself create a private cause of action. *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014, 1021 (Idaho 1986); *Rizzo*, 305 P.3d at 527. And *Rizzo* rejects the proposition that an alleged violation of the Act, standing alone, establishes a breach of the insurance contract. 305 P.3d at 527. The Act may nevertheless supply relevant insurance-industry standards in an insurance bad-faith action. *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 233 P.3d 1221, 1235 (Idaho 2010).

Plaintiffs' allegations suggest a related, but different, contractual theory: that the statutory standards for handling claims informed Federated's obligations in performing the Policy and that Federated's failure to satisfy those standards impaired the contractual benefits for which Plaintiffs bargained. The Court need not decide whether or to what extent § 41-1329 may inform Federated's contractual obligations because Counts Four through Twelve do not actually plead that theory. They do not identify how the particular statutory standards became part of, or otherwise informed,

Federated's contractual obligations, nor do they connect the alleged violations to a Policy benefit that Federated "violate[d], nullifie[d] or significantly impair[ed]." *Rizzo*, 305 P.3d at 528. Instead, the Counts largely treat violations of each subsection of § 41-1329 as establishing a separate breach of the implied covenant. Those allegations are insufficient.

The deficiency does not require dismissal with prejudice, however. The underlying factual allegations may support a single claim for breach of the implied covenant based on multiple theories of how Federated allegedly failed to perform its contractual obligations in good faith. Plaintiffs therefore may amend Counts Four through Twelve to plead, if they can, a claim for breach of the implied covenant of good faith and fair dealing that comports with Idaho law. That claim would remain separate from Count Three's tort claim for insurance bad faith.

Federated argues amendment should be denied because the SAC is Plaintiffs' third attempt to plead their bad-faith theories (Dkt. 25 at 6-7). The Court is not persuaded. Although Plaintiffs have amended their pleading more than once, the Court has not previously addressed the sufficiency or organization of Plaintiffs' claims. Plaintiffs therefore have not repeatedly failed to cure a deficiency which the Court previously identified. Although the Court grants Federated's motion to dismiss Counts Four through Twelve, it does so without prejudice and grants Plaintiffs leave to amend. Fed. R. Civ. P. 15(a)(2).

## ORDER

**IT IS ORDERED that:**

1. Defendant Federated Mutual Insurance Company's Motion to Dismiss Counts Three Through Twelve of Plaintiffs' Second Amended Complaint (Dkt. 24) is **GRANTED IN PART** and **DENIED IN PART**.

2. The motion is **DENIED** as to Count Three.

3. The motion is **GRANTED** as to Counts Four through Twelve and those counts are dismissed without prejudice.

4. Plaintiffs' request for leave to amend is **GRANTED**. Plaintiffs may file a Third Amended Complaint within **twenty-one (21) days** of this Order.

DATED: August 26, 2026

Amanda K. Brailsford
U.S. District Court Judge